May it please the Court, my name is Douglas Kane. I represent Plaintiff and Appellant Kevin Halpern. Halpern is present in the Court today. I would like to reserve time for rebuttal, although I do believe that the issues before the Court today are fairly simple and I'm not sure that we will require the full time. If you get going, do you want me to alert you at five minutes? I do. Okay. Thank you. Now, this case, the ultimate issue of this case is whether defendants Abraham Rodriguez and David Perry violated the constitutional rights of Plaintiff Kevin Halpern when they detained and then subsequently arrested him on the charge of being under the influence of a controlled substance. A charge that the officers themselves eventually concluded was not true. However, it is not the responsibility of this Court to determine that ultimate issue, nor was it the responsibility of the district court. That responsibility properly should be given to a jury. However, the district court usurped that responsibility in granting the defendant's motion for summary judgment. Excuse me. Why is that the case where the facts that are utilized to determine whether or not there was reasonable suspicion to detain or probable cause to arrest are not in dispute, the underlying facts? There are a number of facts that are in dispute. All right. Maybe that's what you need to focus on. And I'm going to tell you, first off, whether he was wearing a T-shirt or whether he was wearing a sweatshirt, your client's entitled to whatever inference would be most favorable to him. But I would not see that. It has to be a material fact. And so why don't you tell us what the material facts are that your client's entitled to an inference that would show that there wasn't probable cause as a matter of law? Thank you, Your Honor. And I must say, I agree with you that the T-shirt versus sweatshirt issue, if that's what the issue was in this case, then we wouldn't be here today. Well, as a matter of fact, in the order, in Judge Ware's order, he says T-shirt or sweatshirt. He didn't even make that factual finding. He said that the plaintiff was wearing either a T-shirt or a sweatshirt. Not important to the trial court. What material facts were utilized by the trial court that were in dispute? Okay. There are a number of material facts, both regarding the conduct of the plaintiff and also, more importantly, regarding the conduct of the officers. Because, of course, what this case is ultimately about is whether the officer's conduct was unconstitutional or not. In terms of the conduct of Mr. Halpern, the one particular important material fact that was in dispute was whether or not he was following the directions of the officers, particularly the directions of Officer Rodriguez. Officer Rodriguez testified that one of the factors that he considered most important in determining that Mr. Halpern was under the influence of a controlled substance was the fact that Mr. Halpern was not following his instructions, not following the directions that he was giving him in performing the tests that Officer Rodriguez was performing. Did the court find that, though, in the order? I'm not aware that the district judge found that in the order, that he assumed that there had been a lack of an ability to follow instructions. That wasn't utilized. It was listed in the court's recitation of the facts, even if it wasn't specifically stated in the legal argument. But the important point, I think, is looking at whether or not there was sufficient evidence presented by the plaintiff that if looking at that evidence in the light most favorable to the plaintiff as the opposing party and making all inferences in his favor, whether a reasonable jury would be able to conclude that his constitution was unconstitutional. If the plaintiff's constitution was unconstitutional, the plaintiff's constitutional rights were violated. Turning to the conduct of the officers, first looking at the initial stop and whether or not a reasonable jury could find that the officers didn't have reasonable suspicion to detain him, which, of course. When did the detention occur? At what point in the stop? I would I would argue that the detention occurred as as soon as the officers were questioning the plaintiff and and conducted the search. Well, they they went up to him and he was standing on the corner flailing his arms, dressed in either a T-shirt or a or a sweatshirt, and he approached the officers and showed him a New York driver's license, I recall. Correct. Now, there's no question he's not detained at that point, I take it. When when he approached the officers, no. And at the point where the detention occurred, if if the officers had had said to him, you're you're free to go if you would like. You don't have any responsibility to talk to us, but we'd like to we'd like to do a search. There would have been no detention. However, they didn't do that. And instead of accepting Mr. Halpern's explanation for why he was there and also explaining why he might have seemed a little bit agitated, the officers proceeded to to to search him and to to to question him. Since they made they noticed that in their view, he was unreasonably dressed for a cold evening, whether it was T-shirt, sweatshirt or whatever it was, that he'd been flailing his arms, that his pupils were enlarged. This is before any measuring or anything like that, that he had a slightly elevated body temperature, even though it was a cold night and all these things would be consistent with somebody who was under a stimulant. And the question would be, did all of those things give the officers the right to at least to detain him and then and to then make the search and that sort of thing? And you say yes or no. I say no. And for a number of reasons. First of all, the the district court accepted with without question the categorization that the defendants expert had made that that plaintiff was perspiring, that he was had an elevated temperature and and did not take into account the fact that, in fact, the original observation of Officer Rodriguez was that he was slightly perspiring and that he was that his temperature was slightly elevated. It's a big difference between making that that that categorization of it being only a slight perspiration or slight elevation of temperature. But I think the most important thing in regard. May I interrupt you for just a moment? I don't think that I don't think the trial court found in coming to this decision to grant summary judgment that your client was heavily perspiring as opposed to lightly perspiring or that body temperature was at a at a greatly elevated level or only slightly elevated. That's why I keep I keep the the the the question as to what facts, if if proven, would be sufficient to establish suspicion to detain a probable cause to to arrest if they be proven is for the court to determine. It's not for a jury to determine. The jury determines whether or not the evidence is sufficient to establish those facts that are made as a as a as a legal determination, as being sufficient as a as a predicate. And you've argued greatly in your brief that the biggest issue here was the factual issue of of whether or not there was reasonable suspicion. That's not a factual issue. That's a legal determination. It seems to me you care to comment on that. Well, first of all, in terms of the question of whether the district court said greatly perspiring, the district court just said perspiring and didn't didn't acknowledge that it was that it was categorized by the officer as a in a small degree. But I think the I don't want to spend too much time on on the reasonable suspicion, because I think that the most important issue is the probable cause. But in terms of terms of the stop, I think the most important thing is that all of the all of the observations that were made by the officer initially were easily explained. I want to ask you about that because you're your client does give explanations. But and and they may be correct. You know, I don't know. You know, I wasn't I was obviously not there. But what he explains is why he had those physical manifestations, because I think he had had a fight with his girlfriend and he'd been jogging and there were things along those lines. How would why they happened affect what the officer saw? If what the officer saw would be just as consistent with he could have been under the influence of drugs. But it turns out, in fact, maybe he had had a fight with his girlfriend and all of that occurred. Isn't it still whether probable cause exists based on an objective standard of what they saw? Well, it is. It is. And again, I think I want to briefly address the reasonable suspicion and then and then move on to the probable cause. This is not a situation like the Chris case that was cited by the district court and by defendants, where the the the the individual being stopped simply said, well, I didn't do it. And the officers obviously aren't aren't required to just accept that. He gave very specific explanations that that were easily verifiable. And if even in the Chris case, the court held that in a situation like that, where exculpatory evidence is easily verifiable, then the officers have have a duty to to to to do that investigation and determine whether that exculpatory explanation is true. Well, if there's a witness there, they can readily ask about about something. And I witness that may be one thing. But here there's there's no obligation on the part of officers to contact girlfriends or other people who may not be there and who may not relate the truth in any event. I don't think there's any case that provides that kind of that obligation on a on an officer under these circumstances. Well, I think, again, it comes down to to whether it's easily accessible. And since the the they're down the street from where the girlfriend lives, the girlfriend's going to say, well, we had an argument. Girlfriend's not going to say, gee, I know absolutely for sure that he hasn't taken anything or he didn't take anything after after we left after this argument. So the so the information from the girlfriend's going to be limited only that they that they had a fight. But I think that that is probably the most important factor that the officers initially relied on was was this guy seemed agitated. And all the other all the other factors follow from that. Well, if it's true that he that he that he left his girlfriend's house because they had broken up, then then it makes it clear. Yes, there's a reason why he was agitated. Yes, there's a reason why he's not dressed correctly for the for the weather. Yes, there is a reason why his his temperature is elevated in his perspiration. But I do want to move on to the to the probable cause issue, if if I may, because I think there's a number of disputed facts that would would allow a reasonable jury to determine that that there was no probable cause. First of all, the one of the factors that was that was relied upon by the by the plaintiff is the fact that the officer, Rodriguez did not do the first three steps of the D.A.R. process. And the defendants said, well, we didn't have to do that because those three, those three steps were not relevant to a determination as to whether an individual is under the influence of a stimulant. However, a very important point that was not taken into consideration by the district court was that Officer Rodriguez testified at his deposition that at the time that he that he decided to do that test, he had not determined that plaintiff was on was under the influence of a stimulant, as opposed to another controlled substance such as PCP, which those tests would be relevant to. Just you're at five minutes. So that's letting you know. I think it's important that I make these points. Another very important point is the issue of the the contradictory findings in the pupil readings, because the pupil readings were the main evidence that the officers used to determine that that they had probable cause to arrest plaintiff. And there was a different reading between Officer Rodriguez, who was the trainee, and Officer Perry, who was the training officer. Now, Officer Perry measured plaintiff's pupils at 6.5, and there was evidence presented by defendant's expert in which he stated that that would be a normal reading in dark circumstances. But since this was a well-lit area, that's not relevant. But Officer Rodriguez himself testified that when he measured plaintiff's pupils, it was in near darkness. And the evidence shows that Officer Perry measured in the same circumstances. So based on defendant's own expert's testimony, the more experienced officer measured plaintiff's pupils at a normal rate for those conditions. And then 20 minutes later, when they measured plaintiff's pupils again in the clearly well-lit area in the hospital, it was well within the normal area. It was 4.5 based on Officer Perry's finding and 6.5 based on Officer Rodriguez's finding. Now, it's been well accepted by this Court that there needs to be objective evidence to support a finding of probable cause. And certainly that kind of evidence would be sufficient for a reasonable jury to find that there was not sufficient objective evidence for the officers to determine that there was probable cause. All right. You want to reserve the balance for rebuttal? Yes. Thank you for your argument. Good morning, Your Honor. George Kovacevic for the City of Santa Cruz and all the other city defendants. If I could, I'm sure you'll have questions. Much unlike I have argued for the night, but much unlike the State Court, you do have a lot of questions. Maybe it will surprise you. Well, if I could only wish. But what I want to start out with, if I could, is take it out of this context, put it into context. It's more understandable to all of us. Husband comes home from work, encounters his wife in the house, and starts yelling. His eyes are glaring. He's perspiring around the forehead, flailing his arms, whatever. The wife thinks, he's mad at me. Well, in fact, the husband just got fired from his job. He came home running, and the question is, is the wife wrong? Of course she's not wrong from her perspective. And that's basically what this case is about. And it's really also about the fact that an appellant misunderstands two aspects. Number one is the issue of undisputed material facts in the context of a reasonable suspicion and probable cause equation or context. And he also doesn't understand the difference between legal opinions and factual opinions, and I think some of the questioning already of counsel has pointed that out. And with respect to the undisputed facts, I want to highlight what has already been said. In our brief, we have delineated a great number of facts that are absolutely undisputed. They're undisputed by Mr. Halpern, and they're undisputed by the expert. Keep in mind, we have objections to his evidence in its entirety anyway as well. But just as an example, Mr. Van Blarecon does not say that these certain factors we rely upon are not indicative of being under the influence. He just doesn't even address them. And so the question is, if these aren't enough, then I dare say all these arrests on the street for alcohol or drug intoxication are going to come to a stop. Because what counsel wants and Mr. Halpern wants is let's conduct the trial at the scene. Let's bring in all the witnesses. Let's ask all the questions. And that, you know, isn't the way probable cause and reasonable or rational suspicion operate. And I do want to raise at this point, because I think it is still raisable, the objection to Mr. Van Blarecon's evidence as a so-called expert. I think counsel appellant is completely incorrect in claiming that, you know, because the trial court didn't enter some formal ruling on that, that you can't do it. You're hearing this de novo, and therefore you can rule on the objections anew. And the problem with Mr. Van Blarecon as an expert is, number one, he's not qualified. There is nothing in his declaration that says he is familiar, has had experience, training, or has testified on health and safety code 11-550 type matters, which is a California law. Well, he has been a police chief for what? He was a police officer for what, 29 years or something? Washington. Well, I think they have drugs there. But he doesn't say that. That's the problem, Your Honor. I mean, I agree. Maybe we could assume that. But he needs to establish that. What's the point of that, though? Because it wasn't even utilized by the trial court in fashioning the order. It was completely irrelevant for the district court. And now you're asking us to start making evidentiary rulings and findings on qualifications where it's really not part of the case at all insofar as the order we're reviewing. I'll stop right there. The only reason I raise this is because he spends a great deal of argument in his briefing. Well, I'm thinking maybe his argument is, if it's admissible and it creates favorable inferences for him, that that would somehow make that there wasn't reasonable suspicion or that there was not probable cause. But I guess it still comes back to what are the undisputed facts that the court has. And while I think officers would like to probably be the final arbiter of legal issues and probably take a lot of exception that the courts do it sometimes, but I think we have to focus on what were the undisputed facts and give all reasonable inferences to the plaintiff and not focus also on what I said, like the T-shirt and the sweatshirt. It can't be you can always find disputed facts, but it has to be material. I agree. I don't know. It sounds to me we're somewhat in agreement. And that's, I guess, my point. Like I said originally, if you go through the list of our facts on 28 and 29 of our brief rational suspicion and on 38 for probable cause, adding to the preexisting ones for rational suspicion, you go down. I think we heard it. I think we're familiar with what that evidence is. I can ask my colleagues if anyone has any additional questions for you. I don't think we do. I mean, the fact that you thought we were going to, we didn't. Thank you, Your Honor. I want to address the point that Mr. Kovacevic made indicating that Mr. Van Blaricorn, plaintiff's expert, did not address the factors that Officer Gates, the defendant's expert, indicated he believed the court is finding reasonable suspicion in the finding of probable cause, because that's simply not true. We have two different experts with two different sets of experience. What can we take from, let's assume it's admissible, what are the favorable inferences that you can get out of that? And how does that factor into the judge or this court that has to find what's reasonable suspicion and what's probable cause? Because let's say that the officer says, I don't think that there was reasonable suspicion. I don't think that there was probable cause. I don't think that his, you know, this court has to make a legal determination, so his conclusion isn't going to trump ours. Correct. And excuse me. But he doesn't add to any facts there. So what is the reasonable inference from that? It is, I mean, the inferences are based on facts. For instance, one of the points that Mr. Van Blaricorn points to in his determination that he didn't believe there was reasonable suspicion was the fact that Mr. Halpern himself approached the officers. Well, that was a factor that Officer Gates said was a factor that he took as something that was. As I'm seeing those, officers always think that their opinion is reasonable. We tell them all the time that we agree or we don't agree. All right? They, you know, they thought they had reasonable cause to arrest. We may say that they don't. We grant motions to suppresses that, you know, as far as that when they think that they had a right to do it. So the fact that he thinks that doesn't mean that, how does that change the facts that we have to look at? I guess we don't really care about his opinion. Not that we don't care, but I don't know how we can factor it in. Sure. I mean, what's important is the facts, not the opinion. And in terms of reasonable suspicion, one of the facts that I think is important is that in explaining why he didn't try to ask Mr. Halpern to explain why he was there or didn't take into account Mr. Halpern's explanation that Officer Rodriguez made was he said, well, criminals will lie to officers. Well, a reasonable inference could be made from that that Officer Rodriguez improperly assumed that this person was a criminal and therefore made a determination that he had reasonable suspicion based on that improper assumption. And in terms of the probable cause determination, I think, not to belabor the point, but the critical facts are the facts that the objective evidence that they had simply didn't support, or certainly a reasonable jury could determine that those facts did not support a conclusion that he was under the influence, that the officer that was making the determination was untrained and was unable to make this determination. The defendants make a big deal about the extensive experience of Officer Perry, but one of the factors that the district court didn't take into account is that the officers didn't talk about this arrest until after it had been made. Officer Perry let Officer Rodriguez. You need to sum up because you're almost two minutes over your time. Okay. Thank you so much. Thank both counsel for your arguments. This matter will now stand submitted, and this court is now in recess.
judges: Thompson, Callahan, Miller